FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 08, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JANELL S.,[1] <br>               Plaintiff, <br><br>    vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br>               Defendant. | No. 1:18-cv-03167-MKD <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 14, 16 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 14, 16. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them only by their first names and the initial of their last names.

ORDER - 1

grants Plaintiff's Motion, ECF No. 14, and denies Defendant's Motion, ECF No. 16.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

other work, the analysis concludes with a finding that the claimant is disabled and

is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

If the claimant is found disabled at any point in this process, the ALJ must also determine if the disability continues through the date of the decision. The Commissioner has established a multi-step sequential evaluation process for determining whether a person's disability continues or ends. 20 C.F.R. § 416.994 (2017). This multi-step continuing disability review process is similar to the five-step sequential evaluation process used to evaluate initial claims, with additional attention as to whether there has been medical improvement. *Compare* 20 C.F.R. § 416.920 *with* § 416.994(b)(5) (2017). A claimant is disabled only if his impairment is "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Determination of whether a person's eligibility for disability benefits continues or ends involves a seven-step process under Title XVI. 20 C.F.R. §

416.994(b)(5). The first step determines whether the claimant has an impairment or combination of impairments that meets or equals the severity of an impairment listed in 20 C.F.R. pt. 404, Subpt. P, App. 1. 20 C.F.R. § 416.994(b)(5)(i). If the impairment does not meet or equal a listed impairment, the second step addresses whether there has been medical improvement in the claimant's condition. 20 C.F.R. § 416.994(b)(5)(ii). Medical improvement is "any decrease in the medical severity" of the impairment that was present at the time the individual was disabled or continued to be disabled. 20 C.F.R. §§ 416.994(b)(5)(iii), 416.994(b)(1)(i).

If there has been medical improvement, at step three, it is determined whether such improvement is related to the claimant's ability to do work—that is, whether there has been an increase in the individual's residual functional capacity. 20 C.F.R. § 416.994(b)(5)(iii). If the answer to step three is yes, the Commissioner skips to step five and inquires whether all of the claimant's current impairments in combination are severe. *Id.* If there has been no medical improvement or medical improvement is not related to the claimant's ability to work, the evaluation proceeds to step four. *Id.*

At step four, if there has been no medical improvement or the medical improvement is not related to the ability to do work, it is determined whether any of the special exceptions apply. 20 C.F.R. § 416.994(b)(5)(iv). At step five, if medical improvement is shown to be related to the claimant's ability to work, it is

determined whether the claimant's current impairments in combination are severe—that is, whether they impose more than a minimal limitation on the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 416.994(b)(5)(v); *see also* 20 C.F.R. § 416.922. If the step five finding is that the claimant's current impairments are not severe, the claimant is no longer considered to be disabled. 20 C.F.R. § 416.994(b)(5)(v).

If the step five finding is that the claimant's current impairments are severe, at step six, a residual functional capacity finding is made and it is determined whether the claimant can perform past relevant work. 20 C.F.R. §§ 416.994(b)(5)(vi) (2017), 416.920(f) (2012); *see also* SSR 82-61, 1982 WL 31387.

Finally, at step seven, if the claimant cannot perform past relevant work, the Commissioner must prove there is alternative work in the national economy that the claimant can perform given her age, education, work experience, and residual functional capacity. 20 C.F.R. § 416.994(b)(5)(vii). If the claimant cannot perform a significant number of other jobs, she remains disabled despite medical improvement; if, however, she can perform a significant number of other jobs, disability ceases. *Id*.

## ALJ'S FINDINGS

On November 25, 2013, Plaintiff applied for Title XVI supplemental security income benefits, alleging a disability onset date of December 26, 2012.

Tr. 550-55.  The application was denied initially, Tr. 432-39, and on

reconsideration, Tr. 443-48.  Plaintiff appeared at a hearing before an

administrative law judge on June 16, 2016 and the hearing was continued so that

she could obtain representation.  Tr. 375-80.  Plaintiff appeared at a second hearing

before an administrative law judge on March 14, 2017.  Tr. 381-415.  On June 28,

2017, the ALJ granted Plaintiff's claim for benefits from October 1, 2015 through

November 27, 2016, and denied Plaintiff's claim for benefits from November 25,

2013 through September 30, 2015 and from November 28, 2016 through June 28,

2017, the date of the ALJ's decision.  Tr. 154-78.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful

activity since November 25, 2013, the application date.  Tr. 162.  At step two, the

ALJ determined that Plaintiff did not have a severe impairment or combination of

impairments from November 25, 2013, the application date, through September 30,

2015.  Tr. 163.  However, the ALJ found that Plaintiff had the following severe

impairments from October 1, 2015 through November 27, 2016: right shoulder

degenerative joint disease, status post hernia repair, and obesity.  Tr. 165.  At step

three, the ALJ found Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of a listed impairment.  Tr.

165.  The ALJ then concluded that, from October 1, 2015 through November 27,

2016, Plaintiff had the RFC to perform sedentary work with the following

limitations:

> [Plaintiff] could lift and/or carry up to 10 pounds occasionally and
> less than 10 pounds frequently. She could stand and/or walk 2 hours
> in an 8 hour day with normal breaks, and sit for 6 hours in an 8 hour
> day. She needed to lie down every 2 hours flat and fully to stretch.
> She was unable to reach overhead with her right dominant hand, and
> could reach less than occasionally with the dominant right hand in all
> other directions.

Tr. 166.

At step four, the ALJ found that Plaintiff was unable to perform any past

relevant work. Tr. 167-68. At step five, the ALJ found that there were no jobs that

existed in significant numbers in the national economy that Plaintiff could perform.

Tr. 168-69. The ALJ concluded that Plaintiff was under a disability, as defined in

the Social Security Act, from October 1, 2015 through November 27, 2016. Tr.

169.

Because the ALJ found Plaintiff was disabled, the ALJ then considered

whether the disability continued through the date of the decision. At step one, the

ALJ found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of a listed impairment. Tr.

169. At step two, the ALJ found medical improvement occurred on November 28,

2016. Tr. 169. At step three, the ALJ found Plaintiff's medical improvement was

related to her ability to work. Tr. 169. The ALJ then skipped to step five and

found that Plaintiff's severe impairments remained the same. Tr. 169. At step six, the ALJ concluded that beginning November 28, 2016, Plaintiff had the residual functional capacity to perform light work with the following limitations:

> [Plaintiff] can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. She can sit 6 hours in an 8 hour day with normal breaks and stand or walk 6 hours in an 8 hour day with normal breaks. She can occasionally push/pull with the lower extremities. She can never climb ladders, ropes or scaffolds. She can occasionally stoop and crouch. She can occasionally reach overhead with the right dominant hand. She can frequently reach in all other directions with the right dominant hand. She should avoid concentrated exposure to hazards such as moving machinery and heights.

Tr. 169-70.

The ALJ also concluded at step six that Plaintiff was not capable of performing past relevant work. Tr. 170. Finally, at step seven, the ALJ found that considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as cashier II; cleaner, housekeeping; and storage facility rental clerk. Tr. 171. The ALJ concluded that Plaintiff's disability ended on November 28, 2016. Tr. 171. Thus, the ALJ concluded that Plaintiff was disabled, as defined in the Social Security Act, from October 1, 2015 through November 27, 2016, and that Plaintiff was not under a disability from November 25, 2013 through September 30, 2015 or November 28, 2016 through June 28, 2017. Tr. 165, 169, 171-72.

On June 27, 2018, the Appeals Council denied review, Tr. 1-9, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for this Court's review:

1. Whether the Appeals Council erred in refusing to consider medical evidence submitted after the ALJ's decision;

2. Whether the ALJ properly evaluated Plaintiff's impairments at step two;

3. Whether the ALJ properly weighed the medical opinion evidence;

4. Whether the ALJ properly determined that medical improvement occurred on November 28, 2016, and properly assessed Plaintiff's RFC; and

5. Whether the ALJ properly considered Plaintiff's symptom claims.

ECF No. 14 at 2.

## DISCUSSION

**A.     Additional Evidence Submitted to the Appeals Council**

Plaintiff argues the Appeals Council incorrectly determined that additional evidence submitted to it did not relate back to the ALJ's decision, and/or was not

material, and therefore erroneously failed to consider the additional evidence.  ECF No. 14 at 7-8; ECF No. 18 at 2-3.

The Social Security regulations permit a claimant to submit additional evidence to the Appeals Council.  20 C.F.R. § 416.1400(b).  The Appeals Council is required to consider new and material evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision" and "there is a reasonable probability that the additional evidence would change the outcome of the decision."  20 C.F.R. § 416.1470(a)(5) & (b) (2017).  Evidence that meets the criteria is to be considered by the Appeals Council and incorporated into the administrative record as evidence, "which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."  *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).  Pursuant to agency policy, a copy of evidence *not* meeting the criteria and therefore not considered by the Appeals Council is nonetheless included as part of the certified administrative record filed with this Court, although by law, the rejected evidence falls outside the scope of the Court's substantial-evidence review.  *See* Soc. Sec. Admin. Hrgs., Appeals, & Litig. Law Man. ("HALLEX"), HALLEX § I-3-5-20, available at https://www.ssa.gov/OP_Home/hallex/I-03/I-3-5-20.html (addressing how additional evidence is to be handled).

*1. Not Related to the Period of Alleged Disability*

Here, the Appeals Council determined that some of the additional evidence did not relate back to the period at issue. Tr. 2. Pursuant to HALLEX § I-3-5-20.C.4, the Appeals Council used the directed language, stating "[t]his additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before [June 28, 2017]." Tr. 2. In addition, because the Appeals Council did not "evaluate the additional evidence because the evidence [was] not related to the period on or before the ALJ decision," HALLEX § I-3-5-20.5, the Appeals Council's notice advised Plaintiff about filing a new application, Tr. 2. Thus, contrary to Defendant's statements otherwise, ECF No. 16 at 5-7, the Appeals Council did not incorporate the rejected evidence into the administrative record for this Court's substantial-evidence review. *See Brewes*, 682 F.3d at 1163; *see Ruth v. Berryhill*, No. 1:16–CV–0872–PK, 2017 WL 4855400 (D. Or. Oct. 26, 2017) (citing other district court decisions in the Ninth Circuit holding that new evidence that the Appeals Council looked at and then rejected did not become part of the administrative record subject to the court's substantial-evidence review). The rejected additional evidence was not exhibited but was included in the certified administrative record filed with this Court pursuant to agency policy. HALLEX I-3-5-20.3. Plaintiff argues that the Appeals Council should have considered new records showing that she

ORDER - 14

experienced ongoing upper extremity pains and underwent ankle surgery. ECF No. 14 at 7-8. There is no dispute that these records were new, as they were from August 2017 through November 2017 and not available when the ALJ made her decision in June 2017. Medical evidence rendered after the ALJ's decision may still relate to a claimant's conditions during the relevant time period. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232-33 (9th Cir. 2011) (finding new evidence relates to before the ALJ's decision when the new evidence concerns the same ongoing impairments present before the ALJ's decision); *Cunningham v. Apfel*, 222 F.3d 496, 499 n.3 (8th Cir. 2000) (noting that, although examination took place "after the date of the ALJ's decision, doctor's notes indicate that the condition had been ongoing for several years" and "[e]arlier records support the conclusion"); *Bergmann v. Apfel*, 207 F.3d 1065, 1070 (8th Cir. 2000) (finding that post-hearing evidence required remand because it concerned deterioration of "relatively longstanding" impairment).

First, Plaintiff contends that the new Yakima Neighborhood Health records relate to Plaintiff's "ongoing" upper extremity pains. ECF No. 14 at 7 (citing Tr. 135). However, Plaintiff makes no persuasive argument as to how the Appeals Council erred in failing to consider this evidence. Defendant asserts that the single treatment note Plaintiff cites to argue that the new evidence included records related to ongoing upper extremity pains showed that Plaintiff began having pain

in her hands two weeks before her doctor's visit on November 3, 2017.  ECF No.

16 at 5 (citing Tr. 135-36).  Thus, the evidence shows that the onset of Plaintiff's

hand pain was in October 2017, several months after the ALJ's decision.  Tr. 135-

36.  Further, Plaintiff's claims of upper extremity pain throughout the record were

related to her shoulder impairment, not pain in her hands.  *See* Tr. 390 (Plaintiff

testified that the primary reason she is unable to work is because she cannot "roll

[her] arm out in front of [her] for a small amount of time without chronic pain");

Tr. 165 (the ALJ found that Plaintiff's severe impairments from October 1, 2015

through November 27, 2016 included right shoulder degenerative joint disease).

Plaintiff fails to show any connection between this additional medical evidence and

the alleged period of disability.

Second, Plaintiff argues that the new Yakima Ambulatory Service records

from November 15, 2017 relate to her right ankle impairment that was identified

prior to the ALJ's decision.  ECF No. 14 at 7-8 (citing Tr. 45, 100).  Defendant

acknowledges that this additional evidence concerning Plaintiff's ankle surgery is

related to the period at issue.  *See* ECF No. 16 at 6, n. 1 (Defendant notes that

Plaintiff "sought treatment in March 2017 for right ankle pain that began three

weeks earlier (i.e., February 2017)").  Thus, the Court concludes that this

additional evidence does relate to the period at issue.

## 2. Material

Although the additional evidence concerning Plaintiff's ankle surgery does relate to the period at issue, this evidence is not material. *See* Tr. 2 (The additional evidence "does not affect the decision about whether [Plaintiff was] disabled beginning on or before June 28, 2017."). New evidence is material if it creates a reasonably possibility that the outcome of the case would be different. *Staley v. Massanari*, 17 F. App'x 609, 610 (9th Cir. 2001) (interpreting Appeals Council's decision and citing *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1984)). Even if this evidence was fully credited, the evidence does not show a reasonable probability that it would change the outcome of the decision because Plaintiff's ankle impairment did not meet the 12-month durational requirement for a finding of disability. 20 C.F.R. § 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than 12 months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at 1165 (affirming the ALJ's finding that treating physician's short-term excuse from work was not indicative of "claimant's long-term functioning"). In her opening brief, Plaintiff argues that her "right ankle impairment [was] first identified in March 2017." ECF No. 14 at 18. However, in her reply brief, Plaintiff contends "her first ankle complaints actually began in October 2015 and [were] objectively supported by imaging in March 2017." ECF No. 18 at 2 (citing Tr. 332, 778-80). In support

of this assertion, Plaintiff cites a treatment note from October 7, 2015 that focused

on her complaints of shoulder pain. Tr. 776-81. Although the treatment note

included a notation that Plaintiff also reported ankle pain at that visit, the notation

did not specify which ankle was in pain, the location of the pain on her ankle, the

type of pain, or any other details. Tr. 776-81. The notation simply stated,

"[Plaintiff] is here for shoulder and ankle pain." Tr. 778. As argued by Defendant

and supported by the record, Plaintiff's acute right ankle pain began in February

2017. ECF No. 16 at 6, n.1; *see* Tr. 188 (March 2, 2017: medical provider reported

in a treatment note that Plaintiff complained of acute right ankle pain with an onset

of three weeks earlier, and noted again that "[Plaintiff] presents through walk-in

complaining of [right] ankle pain, onset [three] weeks ago"); Tr. 189 (The intake

comments from the March 2, 2017 treatment note indicates "[Plaintiff] here for

[right] ankle pain for [three] weeks"). Plaintiff had ankle surgery in November

2017, only nine months after the onset of her ankle impairment. Tr. 100. Plaintiff

does not cite any evidence to show that her ankle impairment remained unresolved

after surgery. Plaintiff fails to demonstrate how one vague notation in an October

2015 treatment note is related to her right ankle impairment that was reported in

March 2017 as beginning three weeks earlier. Because Plaintiff fails to meet her

burden to demonstrate that her right ankle impairment lasted, or was expected to

last, for a continuous period of not less than 12 months, she cannot show that the

additional evidence would affect the decision as to whether she was disabled on or before June 28, 2017.

The Appeals Council also concluded that additional evidence from Community Medical Health Plan of Washington, Virginia Mason Memorial Hospital, Yakima Ambulatory Service, Lincoln Avenue Family Medicine, and Yakima Neighborhood Health was not material when it stated that this evidence did not show a "reasonable probability that it would change the outcome of the decision." Tr. 2; *see Staley*, 17 F. App'x at 610. Plaintiff argues that imaging from August 2017 suggestive of fatty infiltration of the liver directly relates to her abdominal complaints noted throughout the record. ECF No. 14 at 7-8 (citing Tr. 331). Plaintiff makes no further argument and does not explain how an imaging report with results that were "suggestive of fatty infiltration" of the liver, but with otherwise unremarkable findings, either related to her abdominal complaints in the record or caused any functional limitations. Plaintiff does not explain how these findings made after the relevant time period demonstrated that she was more limited than the ALJ found, and thus, Plaintiff fails to show a reasonable probability that this additional evidence would change the outcome of the decision.

Plaintiff also argues there was a reasonable probability that the additional evidence showing she had a plantar spur would change the outcome of the ALJ's decision. ECF No. 14 at 8. Plaintiff asserts that if the ALJ had considered the

"objective evidence of deformity of a major weightbearing joint that required subsequent surgery," there was a reasonable probability that the ALJ would not have found Plaintiff capable of standing or walking for six hours a day beginning on November 28, 2016. ECF No. 14 at 8. However, as discussed *supra*, even if the evidence of Plaintiff's plantar spur was fully credited, the evidence does not show a reasonable probability that it would change the outcome of the decision because Plaintiff's ankle impairment did not meet the 12-month durational requirement for a finding of disability.

Further, it bears noting that Plaintiff appeared before the ALJ for an administrative hearing on March 14, 2017 and throughout the entirety of the hearing she did not mention an ankle impairment or any ankle pain. Tr. 381-415.

For these reasons, the Court finds the Appeals Council did not err in declining to consider and exhibit the additional evidence.

**B.  Step Two**

Plaintiff contends the ALJ erred by failing to identify all medically determinable impairments throughout the record and by failing to identify a number of conditions as severe impairments at step two. ECF No. 14 at 8-13.

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). To

show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.921. An impairment is non-severe if "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…." Social Security Ruling (SSR) 85-28 at *3. Therefore, an impairment is non-severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities, such as walking, standing, sitting, lifting, reaching, carrying, handling, responding appropriately to supervision and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 416.922 (2017); SSR 85-28 at *3.

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

### 1. Non-Medically Determinable Impairments

Plaintiff argues that the ALJ failed to assess her endometriosis and right ankle impairments as medically determinable impairments. ECF No. 14 at 11-12. Plaintiff argues that the ALJ failed to adequately consider the nature of her endometriosis and asserts that total hysterectomies do not always resolve the symptoms of endometriosis. ECF No. 14 at 12. She argues that after her hysterectomy she continued to suffer ongoing abdominal pains and cramping, although to a lesser degree than before surgery. ECF No. 14 at 13. Plaintiff also argues that she complained of ankle pain since October 2015,[2] Tr. 778, imaging confirmed an ankle impairment in March 2017, Tr. 332, and she had ankle surgery in November 2017, Tr. 100. ECF No. 14 at 12. Plaintiff cites treatment notes where these conditions were diagnosed, observed, or reported. Tr. 100, 332, 652, 778. However, the "mere diagnosis of an impairment … is not sufficient to sustain a finding of disability." *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). Plaintiff has identified no evidence indicating that these conditions more than minimally impacted her ability to perform basic work activities. A mere recitation

---

[2] In her opening brief, Plaintiff noted that she complained of ankle pain in October 2016, but the treatment note she cited was dated October 2015. ECF No. 14 at 12 (citing Tr. 778).

of medical diagnoses does not demonstrate how each of the conditions impacts

Plaintiff's ability to engage in basic work activities.  Thus, Plaintiff has not

demonstrated that the ALJ erred.

### 2. Non-Severe Impairments

From November 25, 2013 through September 30, 2015, the ALJ concluded

that Plaintiff's ovarian cysts; total hysterectomy, December 2013 with post-

surgical complications of short duration; abdominal pain; enlarged uterus; and

pelvic abscess status post hysterectomy were non-severe impairments.  Tr. 163.

Plaintiff argues that the ALJ erred by failing to find that her uterine and ovarian

conditions were severe impairments.  ECF No. 14 at 9.  Here, under the step two

analysis, the ALJ determined that Plaintiff did not have an impairment or

combination of impairments that significantly limited, or was expected to

significantly limit, her ability to perform basic work-related activities for 12

consecutive months.  Tr. 163.  This finding is supported by substantial evidence.

Plaintiff argues that the evidence shows she had uterine and ovarian impairments

since March 2012.  ECF No. 14 at 9-11; *see, e.g.,* Tr. 761 (March 29, 2012:

Plaintiff was considered in "urgent" need of a gynecological evaluation); Tr. 765

(March 29, 2012: Plaintiff had been suffering for two months from severe

dysmenorrhea, she noticed abdominal cramps, and she had a "massive" and

irregular uterus 18-weeks in gestational size); Tr. 759 (April 4, 2012: an ultrasound

confirmed multiple bleeding fibroids up to 10cm in size and surgery was already planned). However, the record also shows that Plaintiff did not see a provider with concerns about her abdomen between April 2012 and June 2013. Plaintiff visited the emergency department on June 17, 2013 because she had a "[s]udden onset of symptoms" that included abdominal pain she described as "different compared with previous episodes." Tr. 913. Plaintiff had been vomiting and had diarrhea throughout that day. Tr. 913. Treatment notes from that same day show Plaintiff had a large, moderately tender uterus, and imaging showed an enlarged fibroid uterus and cyst. Tr. 905, 911. In December 2013, six months after her "sudden onset" of symptoms, Plaintiff had a hysterectomy. Tr. 899. She developed a pelvic abscess shortly after surgery and it was promptly removed and drained. Tr. 718. By January 2014, examination results showed "minimal discomfort" in Plaintiff's pelvis, Tr. 863, and treatment notes from December 2014 reported that she was happy with the results of the surgery and had "no problems" after recovery, Tr. 862. On this record, the ALJ did not err by finding that Plaintiff's uterine and ovarian conditions were non-severe impairments.

Plaintiff also argues that the record indicated she complained of burning pains and an inability to lift her right upper extremity above her head since at least September 2012, and although the evidence indicated that her condition devolved further over the course of the record, the April 2016 MRI showed a hidden lesion.

ECF No. 14 at 12 (citing Tr. 744, 822). Plaintiff argues that evidence this

impairment existed since the beginning of the record provides further support that

the ALJ erred in finding Plaintiff had no severe impairments prior to October 1,

2015. ECF No. 14 at 12. However, Plaintiff has identified no evidence indicating

that her shoulder condition more than minimally impacted her ability to perform

basic work activities since September 2012. Thus, Plaintiff has not demonstrated

that the ALJ erred.

### C. Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the October 2013 medical

opinion of Caryn Jackson, M.D. ECF No. 14 at 13-16.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight

to opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995)).

On October 4, 2013, treating physician Caryn Jackson, M.D., completed a physical functional evaluation of Plaintiff. Tr. 634-36. Dr. Jackson indicated that Plaintiff's main complaint and reported symptom was abdominal pain. Tr. 634. She noted that the reported onset of Plaintiff's abdominal pain was in 2012 and stated that Plaintiff would be scheduled for a hysterectomy. Tr. 634. Dr. Jackson opined that Plaintiff had moderate to marked limitations in performing basic work-related activities as a result of her uterine fibroids, right ovarian cyst, and

abdominal pain. Tr. 635. She opined that Plaintiff was capable of performing sedentary work and estimated that Plaintiff's limitation on work activities would persist for another 12 months. Tr. 636. Dr. Jackson acknowledged that Plaintiff had an upcoming surgery and noted that Plaintiff may require a gastrointestinal evaluation if she was still in pain after surgery. Tr. 636.

The ALJ gave Dr. Jackson's opinion partial weight. Tr. 165. Because Dr. Jackson's opinion was contradicted by the nonexamining opinion of Dr. Ignacio, Tr. 424-31, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Jackson's opinion.[3] *Bayliss*, 427 F.3d at 1216. Plaintiff asserts that Dr. Jackson's opinion is unrebutted and therefore, the ALJ was required to give clear and convincing reasons for rejecting her opinion. ECF No. 14 at 14. However, Dr. Jackson opined that Plaintiff's limitation on performing work activities would persist for a period of 12 months, which was inconsistent with Dr. Ignacio's opinion that Plaintiff's impairments did not meet the 12-month durational requirement for a finding of disability, Tr. 424-31.

---

[3] Dr. Ignacio opined that Plaintiff's impairments did not meet the 12-month durational requirement for a finding of disability. Tr. 427.

### 1. Inconsistent with Treatment History

The ALJ found that Dr. Jackson's opinion was inconsistent with Plaintiff's treatment history. Tr. 165. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Further, an ALJ may discount an opinion that reflects only temporary limitations. *Carmickle*, 533 F.3d at 1165. Plaintiff argues that the ALJ evaluated Dr. Jackson's opinion based on the improper determination that Plaintiff's uterine and ovarian impairments failed to meet the 12-month durational requirement for a finding of disability. ECF No. 14 at 14-15 (citing Tr. 163-65). The ALJ determined that the evidence showed Plaintiff had a sudden onset of these symptoms in June 2013, and the symptoms improved with a hysterectomy in December 2013, two months after Dr. Jackson rendered her opinion. Tr. 164-65, 634-36, 913. The ALJ acknowledged that Plaintiff had temporary post-surgical complications which quickly improved with prompt treatment. Tr. 164. Treatment notes following Plaintiff's hysterectomy showed the procedure was effective in treating her abdominal and uterine conditions. *See* Tr. 863 (Plaintiff had minimal discomfort after recovering from her hysterectomy); Tr. 862 (Plaintiff reported being happy with the results of the surgery and had "no problems" after recovery). The ALJ reasonably concluded that this record of a positive response to treatment and temporary limitations was inconsistent with Dr.

ORDER - 28

Jackson's opinion that Plaintiff was limited to performing sedentary work for 12 months. Tr. 165. Although Plaintiff argues for a different interpretation of the evidence, the Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). This was a specific and legitimate reason to discredit Dr. Jackson's opinion.

### 2. Incomplete Diagnostic Picture

The ALJ found that the persuasiveness of Dr. Jackson's opinion was reduced because she conditioned her opinion on how Plaintiff might do following surgery. Tr. 165 (citing Tr. 636). An ALJ may discount an opinion that is not based on a complete diagnostic picture. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Dr. Jackson's opinion, issued two months before Plaintiff's hysterectomy, was inconsistent with evidence in the record following her surgery. As discussed *supra*, treatment notes following Plaintiff's hysterectomy showed the procedure was effective in treating her abdominal and uterine conditions. *See* Tr. 862-633. In addition, state agency reviewing physician, Dr. Ignacio, reviewed Plaintiff's records and opined that her symptoms largely resolved after surgery and her impairments did not meet the 12-month durational requirement. Tr. 427-28. A finding that Dr. Jackson's opinion was not based on a complete diagnostic picture was a specific and legitimate reason to discredit her opinion.

## D. Medical Improvement and RFC Determination

Plaintiff argues that the ALJ erred by finding medical improvement occurred as of November 28, 2016, and by improperly crafting an RFC that was unsupported by medical opinion evidence. ECF No. 14 at 16-19.

### 1. Medical Improvement

Plaintiff argues that the ALJ erred by determining that medical improvement occurred as of November 28, 2016. ECF No. 14 at 16. Once a claimant has been found disabled, there is a presumption of continuing disability. *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983). The Commissioner "has the burden to come forward with evidence of improvement." *Id*. A determination regarding medical improvement occurs at step two of a seven-step process. 20 C.F.R. § 416.994(b)(5)(ii). Medical improvement is "any decrease in the medical severity" of the impairment that was present at the time the individual was determined to be disabled. 20 C.F.R. § 416.994(b)(1)(i). A finding that there has been a decrease in medical severity must be based on changes in the symptoms, signs, and/or laboratory findings associated with the impairment. *Id*. In assessing whether medical improvement has occurred, the medical severity of the impairments present at the time of the most recent favorable decision of disability is compared to the current medical severity of those same impairments. 20 C.F.R. § 416.994(b)(1)(vii).

Here, the ALJ made extensive findings that Plaintiff was disabled from October 1, 2015 through November 27, 2016.  Tr. 166-67.  The ALJ found that during the period in which Plaintiff was disabled, she had the severe impairments of right shoulder degenerative joint disease, status post hernia repair, and obesity.  Tr. 165.  Plaintiff had a large right rotator cuff tear, and in June 2016, John W. Adkison, M.D., operated to repair the tear and treat her joint arthritis.  Tr. 822, 953, 1073.  The ALJ then found medical improvement of Plaintiff's shoulder occurred as of November 28, 2016, giving significant weight to statements in a treatment note from Dr. Adkison.  Tr. 170 (citing Tr. 1069-70).  On November 28, 2016, Dr. Adkison completed a follow-up examination of Plaintiff's right shoulder following the corrective surgery in June 2016.  Tr. 169 (citing 1069-70).  Dr. Adkison noted that even without formal physical therapy, Plaintiff did not have any significant pain problems and she had regained "full mobility with home exercise."  Tr. 1069.  Dr. Adkison reported that Plaintiff was "quite pleased with her result."  Tr. 1069.  The ALJ found that Dr. Adkison's statements were well-supported by his test results, noting that Plaintiff's active range of motion (ROM) with the right shoulder on external rotation and abduction were both normal at 90°, internal rotation and abduction were normal at 90°, flexion was normal at 180°, along with extension at 60°, external rotation and flexion were good at 90°, and cross-body adduction was also good at 14°.  Tr. 170 (citing Tr. 1070).  On physical

ORDER - 31

examination, Plaintiff had no muscle atrophy and Dr. Adkison concluded Plaintiff had "an extraordinary result with absolutely full range of motion and no pain."  Tr. 1070.  The ALJ noted that Dr. Adkison reported Plaintiff "is happy with [the] results" and follow-up was arranged on an as-needed basis.  Tr. 170 (citing Tr. 1070).  Based on this record, there was substantial evidence to support the ALJ's finding that Plaintiff had experienced medical improvement related to her right shoulder impairment as of November 28, 2016.  Tr. 169-70.

During Plaintiff's period of disability, the ALJ found she was capable of performing sedentary work with additional limitations related to her shoulder impairment, as the RFC restricted Plaintiff to lifting and/or carrying up to 10 pounds occasionally and less than 10 pounds frequently, no overhead reaching with her right dominant hand, and less than occasional reaching with the right dominant hand in all other directions.  Tr. 166.  However, the ALJ also included in the RFC limitations related to Plaintiff's other impairments, such as the ability to stand and/or walk for only two hours in an eight-hour day with normal breaks and the need to lie down every two hours flat and fully to stretch.  Tr. 166.  The Commissioner "has the burden to come forward with evidence of improvement." *Murray*, 722 F.2d at 500.  While substantial evidence supports the ALJ's conclusion that Plaintiff experienced medical improvement with respect to her right shoulder as of November 28, 2016, the ALJ failed to discuss any evidence of

medical improvement related to Plaintiff's other impairments when assessing whether medical improvement had occurred. The ALJ erred at this step of the analysis.

### 2. Residual Functional Capacity Assessment

Plaintiff argues that the ALJ's RFC is unsupported by any medical source in the record, and that the ALJ erred in assessing the objective evidence from Dr. Adkison's physical examination when formulating the RFC. ECF No. 14 at 16-18. Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of an impairment and what a claimant can still do despite impairments and restrictions. 20 C.F.R. § 416.927(a). Plaintiff contends that Dr. Adkison's statements within his treatment notes did not constitute a medical opinion because he did not provide any functional assessments that could be translated into Plaintiff's ability to perform work-related activities. ECF No. 14 at 16-19. The ALJ evaluated Dr. Adkison's notations that Plaintiff did not have any significant pain problems and had regained full mobility, along with other notations in the treatment note, as a medical opinion. Tr. 169-70. Although Dr. Adkison did not provide any functional assessments, he did provide an opinion as to the nature and severity of Plaintiff's shoulder impairment. Because he determined that Plaintiff had regained full mobility in her right shoulder with no significant pain and full range of motion, Tr. 1070, there was no need for Dr.

Adkison to identify what Plaintiff could still do despite her impairments and restrictions, as he opined that she no longer had any right shoulder impairments or restrictions. The ALJ did not err by evaluating Dr. Adkison's statements as a medical opinion.

However, the ALJ failed to discuss how the medical evidence supported the RFC. "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). An ALJ must set "out a detailed and thorough summary of the facts and conflicting clinical evidence," state her interpretation thereof, and make findings. *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986); *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) (requiring the ALJ to do more than simply state conclusions). In doing so, an ALJ has an independent duty to fully and fairly develop the record. *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001). This duty to develop the record is triggered if the evidence is ambiguous or the record is inadequate to make a decision. *Id*. The ALJ may develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record. *Id*. (citing *Tidwell v. Apfel,* 161 F.3d 599, 602 (9th Cir. 1998)). Here, the ALJ relied upon Dr. Adkison's statements and range of motion examination results to craft an RFC finding Plaintiff capable of

performing light work with additional restrictions. Tr. 169-70. The ALJ found that Dr. Adkison's range of motion examination results supported his statements, but Dr. Adkison did not translate the range-of-motion results into the lifting and carrying limitations set forth in the RFC. The ALJ found Plaintiff capable of performing light work with additional limitations—limitations that Dr. Adkison did not identify. Although Dr. Adkison's statements that Plaintiff had regained full mobility with no significant pain constitute a medical opinion, the ALJ did not explain how this opinion supports the RFC.

The ALJ's own lay assessment of the objective evidence is inadequate, on its own, to support this RFC. It was improper for the ALJ to formulate an RFC for light work on Dr. Adkison's opinion and examination results alone and without the support of a medical opinion to assess the functional limitations that were included in the RFC. An ALJ may not substitute her own opinion for that of a physician without relying on medical evidence or authority in the record. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). "[A]s a lay person, an ALJ is simply not qualified to interpret raw medical data in functional terms." *Padilla v. Astrue*, 541 F.Supp.2d 1102, 1106 (C.D. Cal. 2008). ALJs "must be careful not to succumb to the temptation to play doctor." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). "Reasonable inferences may be drawn, but presumptions, speculations and suppositions should not be substituted for evidence." SSR 86-8;

*see also Morales v. Apfel*, 225 F.3d 310, 317–18 (3d. Cir. 2000) ("an ALJ may not

make speculative inferences from medical reports").  Further, while Dr. Adkison's

statements address her shoulder impairment, there is no indication in the doctor's

note that Plaintiff's capabilities improved with respect to her need to lie down

throughout the workday or her ability to sit or stand for two hours in an eight-hour

day.  Because no medical source of record supports the functional limitations set

forth in the RFC, and, as discussed *supra*, no medical source of record supports a

finding of medical improvement as to Plaintiff's other severe impairments, remand

is necessary for the limited purpose of properly developing whether Plaintiff

medically improved to the point of non-disability, and to craft an RFC supported

by substantial evidence.  On remand, the ALJ is instructed to take testimony from a

medical expert who has had the opportunity to review all of the medical evidence

of record, question a vocational expert, and, if necessary, Plaintiff shall undergo a

physical consultative examination.

### E.    Other Challenges

Plaintiff raises challenges to the ALJ's evaluation of Plaintiff's symptom

claims.  ECF No. 14 at 20-21.  However, because this case is remanded for the

limited purpose of determining whether medical improvement occurred as to all of

Plaintiff's severe impairments, and to formulate an RFC that is supported by

substantial evidence in the record, the Court declines to address Plaintiff's other

challenges here.  On remand, the ALJ is instructed to reevaluate Plaintiff's medical improvement, craft a new RFC, and evaluate Plaintiff's symptom claims in light of the evidence.

## F.    Remedy

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 14 at 19-21.  "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)).  When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met.  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citations omitted).  Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons

for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, further proceedings are necessary. The ALJ erred by formulating an RFC that was unsupported by any medical source in the record. As discussed *supra*, further proceedings are necessary to fully develop the record.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 16, is **DENIED**.

3. The Court enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED July 8, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 39